## WASHINGTON RY. & ELECTRIC CO. v. WASHINGTON, B. & A. ELECTRIC R. CO.

## WASHINGTON, B. & A. ELECTRIC R. CO. v. WASHINGTON RY. & ELECTRIC CO.

Court of Appeals of District of Columbia.
Submitted January 10, 1929. Decided April 1, 1929.

Nos. 4700, 4701.

S. R. Bowen and J. S. Barbour, both of Washington, D. C., for plaintiff.

F. J. Hogan, of Washington, D. C., and George Weems Williams, of Baltimore, Md., for defendant.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The Washington Railway & Electric Company (hereinafter called the Washington Company), as plaintiff below, demanded judgment against the Washington, Baltimore & Annapolis Electric Railroad Company (hereinafter called the Annapolis Company), upon a certain award found as alleged by a board of arbitrators to whom the parties had submitted certain disputes arising out of the performance of a written contract relating to the transfer of passengers between the connecting railways of the respective companies. Plaintiff alleges that by consent of the parties the arbitrators had found and announced the proper construction of the contract in question and the rules governing its application, leaving the parties themselves to ascertain the status of the accounts between them by applying the rules to the conceded computation made by the accountants in the case. Plaintiff claimed that it appeared from the award as thus applied that the defendant was indebted to it in the sum of $134,981.38 as principal, and $32,585.46 as interest upon annual balances from 1917 to 1924, for which it prayed judgment. The defendant company in its plea admitted the submission of the dispute to the board of arbitrators, and that the arbitrators had filed an award announcing certain general principles applicable to the settlement thereof, but defendant claimed that the application of these principles to the facts and circumstances of the case disclosed that defendant was indebted to the plaintiff in the sum of $15,440.92, and no more. The lower court gave judgment for the plaintiff in the sum of $143,175.71, thereby, however, denying plaintiff's demand for $32,585.46 interest upon annual balances, as claimed in the declaration. The plaintiff accordingly appealed. The defendant also appealed.

It appears that the dispute between the two companies resulted from the collection by the Annapolis Company for the Washington Company of certain fares from passengers upon its cars while operating within the District of Columbia under a written contract then existing between them. The collection consisted partly of cash fares, partly of tickets or transfers issued by the Washington Company, and partly of transfers or coupons attached to through tickets of the Annapolis Company issued by the latter company on behalf of the Washington Company. It was claimed by the Washington Company that the Annapolis Company was bound to account to it for the cash fares and for the Washington Company's tickets and transfers as actually received, and also for the coupons issued by the Annapolis Company at the legal rate of fare for tickets in force at the time in the District of Columbia. The Annapolis Company conceded that it was bound to account for the cash fares and the Washington Company's tickets as actually collected by it, but contended that under the terms of the contract it was to account for the coupons issued by it at an agreed rate of 4¼ cents each, regardless of the legal rate of fares in force within the District. This dispute together with others not involved herein was submitted to a board of arbitrators, who heard the evidence and arguments, and delivered a written award. The parties then disagreed as to the proper interpretation and application of the award, whereupon the Washington Company brought the present action, and the lower court interpreted the written award and entered judgment upon it. The present cross-appeals challenge the correctness of the interpretation and judgment.

In order properly to interpret the award it is necessary to review the facts and arguments submitted to the arbitrators. It appears that the Washington Company operates one of the street railway systems of the District of Columbia, while the Annapolis Company operates a surburban railway connecting the cities of Baltimore and Annapolis with the city of Washington. The Annapolis Company, however, had never obtained a franchise to extend its railroad into the District of Columbia; it therefore built its road to a point in the eastern boundary line of the District, so as to connect with the Washington Company's railway at that point, whereby the traffic over the Annapolis railroad might reach the business portion of Washington over the Washington Company's tracks. The two companies accordingly entered into a written contract defining the terms of an arrangement between them respecting the exchange of passengers and other related matters.

Under the contract the Annapolis Company was to operate its cars from points in Maryland to the District line, where the cars were to be received by the Washington Company, and operated back and forth between the District line and the corner of Fifteenth and H streets, Northeast, in the city of Washington. The Annapolis cars while in the District were to be considered as cars of the Washington Company and were to be operated under its franchise, and the Annapolis employees in charge of the cars were to continue in actual service upon them, but were to be considered as employees of the Washing-

ton Company so long as they were within the District. When the Annapolis cars entered the District the employees were to collect for the Washington Company from the passengers thereon, "such cash fares, identification checks or other evidence of the right of a passenger to ride, as said Washington Company may be legally entitled to collect from passengers on its own cars on said line," and the passengers when the fares were lifted were to receive transfers which would entitle them to the privileges at the time enjoyed by passengers of the Washington Company within the District riding on transfers. It was expressly provided that all fares of whatever kind thus collected were to be retained by and be the property of the Washington Company. In addition to the fares thus collected the Washington Company was to be paid by the Annapolis Company three-quarters of one cent for each fare collected as aforesaid in the form of a ticket or other evidence of the right of a passenger to ride, subject however to the condition that if the gross receipts so collected by the Washington Company should amount to $50,000 per annum the Annapolis Company should not be required to pay the aforesaid three-fourths of one cent except in so far as necessary to maintain the annual receipts at the sum of $50,000; and in calculating the annual income for the purpose of such an accounting the tickets received as fares were to be valued at four and one-quarter cents each; and subject furthermore to the condition that if the receipts should amount to $70,000 per annum, counting the tickets so received at 4⅙ cents each for the purpose of such accounting, the Washington Company was to pay to the Annapolis Company such amount as may be in excess of 4 cents for each passenger so carried during the year. It was also provided that in case of any voluntary or compulsory reduction of fares by the Washington Company within the District there should be a corresponding reduction equal to such per cent. reduction in fares, in calculating fare values, totals, compensations and excess payments in respect to the foregoing provisions. The contract also provided that in case of dispute between the parties with reference to any matter growing out of the execution thereof, the matter so in dispute should be submitted for decision to three arbitrators to be selected in a manner therein defined, and that the decision of a majority of them should be final and binding upon the parties to the contract.

On February 5, 1909, a supplementary agreement in writing was executed by the two companies, whereby it was provided that the route of the Annapolis Company's cars within the city of Washington should be extended to the corner of Fifteenth street and New York Avenue Northwest; and that the Annapolis Company should make certain payments to the Washington Company because of alterations in its tracks made necessary by this change of route, and should pay also an annual sum toward the maintenance thereof.

When the respective companies began operations under the contract it was the practice, as provided thereby, for the employees upon the Annapolis cars when entering the District to collect from the passengers the lawful fares for rides within the District, either in cash or in tickets or like evidence issued by the Washington Company, and to deliver such collections immediately to the latter company. After a time however a more convenient practice was adopted by the employees without objection, whereby the receipts were turned over to the Annapolis Company, which accounted for them monthly to the Washington Company. It likewise became the practice without objection for the Annapolis Company to issue through tickets for rides from points in Maryland to the city of Washington with coupons attached to serve as fares for rides upon the Washington Company's cars within the District. These coupons purported to be issued by the Annapolis Company for account of the Washington Company, and were accepted as fares by the latter company and charged as such against the Annapolis Company. It is conceded that these changes of procedure were not intended to modify or affect the terms of the written contract already existing between the respective companies.

Actual operations between the two companies under the contract of April 15, 1907, began in the year 1908. At that time the Washington Company was entitled to collect fares within the District at the rate of 5 cents cash or 6 tickets for 25 cents, and this rate continued until December 1, 1918. The total receipts of the Washington Company for fares from the Annapolis traffic for a single year did not reach the annual sum of $50,000 until the year 1917; consequently the adjustment made dependent upon annual receipts of that amount did not become operative until that year. A controversy arose in that year between the companies relative to the calculations authorized by the contract when the annual receipts amounted

to $50,000 per annum. On May 29, 1919, the Public Utilities Commission of the District of Columbia issued an order providing for a charge of two cents by the Washing Company for each transfer issued by it, and this also gave rise to a dispute between the companies. Accordingly, on July 7, 1919, the companies entered into a written contract for a submission of the points in difference between them to a board of arbitrators duly selected by them, agreeing therein that the decision of a majority of the board upon the matters submitted should be final and binding upon the parties. The submission, among other matters, called for a proper construction of the provisions of the contract relating to the compensation to be paid by the Annapolis Company to the Washington Company for the handling of passenger traffic in the years 1917 and 1918, and of the basis upon which the same should be calculated and awarded. The submission also called for a decision as to whether the Washington Company was entitled to collect from the Annapolis Company the transfer fee of two cents for each transfer issued to passengers coming into Washington on the Annapolis cars, or transferred to the Annapolis cars when leaving Washington, or transferred to the city street cars at points of intersection in Washington.

After the date of the submission and while these matters were pending before the board, the Public Utilities Commission of the District of Columbia at various times increased the rate of fares which the Washington Company might lawfully collect either in cash or tickets from passengers on its cars within the District, and the question then arose whether the Annapolis Company should account to the Washington Company at the increased rates for the coupons issued by it as aforesaid to be used by its passengers when riding upon the cars of the latter company. These questions, together with others not material here, were heard by the arbitrators upon the evidence and arguments submitted by the respective parties. It is true that most of the increase in fares arose by reason of regulations passed by the Public Utilities Commission after the date of the submission to arbitration, and accordingly were not specifically mentioned in the submission. The same principles, however, were involved in the dispute respecting the charge for transfers, which was specifically submitted to the arbitrators for decision by them. The contract between the companies did not provide for the collection of such charges,

but they, like the other increased rates, were granted by later orders of the Public Utilities Commission. The subject of increased rates of fare, therefore, became the subject of evidence and argument before the arbitrators and they could not avoid a decision upon the principles thereby involved. And furthermore it was agreed by the parties that the award of the arbitrators constitutes an award as to the true construction to be placed on the contract of April 5, 1907, as modified by the contract of February 5, 1909, not only for the years 1917 and 1918, but for all years subsequent thereto, in which any of the principles involved in the award and determined thereby may be concerned.

In our opinion the award unmistakably holds in principle that the Annapolis Company was bound under the contract to account to the Washington Company at the full legal rate of fare for the cash fares which were collected upon its cars for rides within the District of Columbia, and also for the full legal rate for all transfers and coupons issued by the Annapolis Company on account of the Washington Company and collected from passengers upon its cars within the District. This conclusion inevitably follows from the decision of the arbitrators requiring the Annapolis Company to account for transfers at the rate established by the Public Utilities Commission, notwithstanding that such charge was first authorized long after the date of the contract. The award moreover refers to the provision contained in the contract whereby the Washington Company was authorized to collect from passengers on the Annapolis Company's cars, such cash fares, tickets, transfers or other evidence of the right of a passenger to ride, as the Washington Company may be legally entitled to collect from passengers on its own cars, and that such cash fares, tickets and checks are to be retained by and be the property of the Washington Company. It is hardly necessary to state that the Washington Company is "legally entitled to collect from passengers on its own cars" such rates of fare as are prescribed by the Public Utilities Commission of the District of Columbia. The award does not state either directly or by implication that the "legal fares" which may be collected by the Washington Company under the contract are to be limited to the rates in force at the date thereof. It is true that the contract provides that "for the purpose of fixing the annual amount of receipts" as a basis for the several adjustments provided by the contract in case the annual receipts

amount to $50,000 or to $70,000, each ticket, transfer or other evidence of the right of a passenger to ride, was to be valued at 4¼ cents or 4⅙ cents, according to the purpose of the calculation. The award however does not state that such a method of valuation shall be applied except when calculating the amount of annual receipts for the purpose of the adjustments aforesaid. There is no reason to believe that the interpretation given to this term of the contract by the arbitrators differed from that expressed before them by counsel for the Annapolis Company. in the course of argument, to wit: "In the concluding sentence of this last paragraph of section 9 it provides that 'tickets, identification checks, or other evidence of the right of a passenger to ride, except free passes, are, for the purpose of arriving at the said excess or surplus to be paid, to be given a value of 4⅙ cents.' That does not deal with payment, but is a formula for getting at the excess to be paid. Is it right? * * * To put it in the words of the contract it is really a formula to get at the excess to be paid."

■ This conclusion forecloses the various arguments advanced herein by the Annapolis Company; for the award of the arbitrators constituted a final adjudication of the issues before them, and these cannot be relitigated upon a charge of error in the award. Campbell v. Campbell, 44 App. D. C. 142. The finding of the lower court in favor of the Washington Company for the principal sum claimed by it was therefore correct.

■ We are of the opinion that the lower court adopted the correct method of computing interest in favor of the Washington Company upon the amount which was found due to it. During the years 1917 to 1922, inclusive, owing to oversight or misinterpretation of the contract, the Washington Company regularly billed the Annapolis Company for all tickets and coupons collected by the latter company upon the cars of the Washington Company, at the rate of 4¼ cents each. This method of accounting was erroneously accepted as correct by both companies. The lower court refused to allow interest to the Washington Company upon the annual balances found due to it for these years, but allowed interest upon the amount found due to the Washington Company from the end of the year 1923 up to January 31, 1925, and the amount thereof was included within the judgment which in turn bears interest from its date.

"The rule seems therefore to be this, that when a mutual mistake occurs between the payer and receiver of a sum of money, by which the whole has not been paid, or too much has been received, interest is not recoverable on the sum so withheld or received, unless it has been unjustly withheld or unjustly received. The party retaining the money by mistake, may well rely on the acquittance received or given, until the injured party makes known his claim and demands correction and payment. After such demand, if it be refused, and it turns out that there was money due which ought to have been paid, it will bear interest from demand until paid." Second & Third St. Passenger Railway Co. v. Philadelphia, 51 Pa. 465, 468.

See Brainerd v. Champlain Transp. Co., 29 Vt. 154; Driver v. Brunemer, 40 App. D. C. 105, 125.

The decision of the lower court is affirmed. The costs of the appeal to be equally divided.